JAMES G. SNELL, California Bar. No. 173070
JSnell@perkinscoie.com
DANIEL E. LASSEN, California Bar No. 271446
DanLassen@perkinscoie.com
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, CA  94304-1212
Telephone:  650.838.4300
Facsimile:  650.838.4350

*Attorneys for Defendant*
*Facebook, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FRANCO CARACCIOLI, an individual,<br><br>               Plaintiff,<br><br>    v.<br><br>FACEBOOK, INC., a Delaware corporation, and Does 1-10,<br><br>               Defendant. | Case No. 15-cv-04145-EJD<br><br>**DEFENDANT FACEBOOK, INC.'S NOTICE OF MOTION TO DISMISS AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       March 3, 2016<br>Time:      9:00 a.m.<br>Courtroom: 4<br>Judge:    Hon. Edward J. Davila |

1

2

**<u>TABLE OF CONTENTS</u>**

3

I.      STATEMENT OF ISSUES .................................................................................. 2

II.     INTRODUCTION .............................................................................................. 2

III.    SUMMARY OF PLAINTIFF'S ALLEGATIONS ............................................. 2

IV.     RELEVANT BACKGROUND .......................................................................... 3

V.      LEGAL STANDARD ........................................................................................ 4

VI.     ARGUMENT ..................................................................................................... 4

       A.      Plaintiff's Allegations Fail To State A Claim Against Facebook, Because
            Plaintiff's Allegations Contradict Facebook's Terms............................... 4

       B.      Plaintiff's Claims Are Barred By Section 230 Of The Communications
            Decency Act. ............................................................................................. 6

            1.      The Communications Decency Act Prohibits Lawsuits Against
                  Service Providers Like Facebook Based on User-Generated Content.
                  ...................................................................................................... 7

            2.      Facebook Meets All the Requirements for Immunity Under the
                  Communications Decency Act.................................................... 8

VII.   CONCLUSION .................................................................................................. 12

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

CASES

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...............................................................................................4

*Barnes v. Yahoo!, Inc.,*
  570 F.3d 1096 (9th Cir. 2009)...............................................................................8

*Barrett v. Rosenthal,*
  40 Cal. 4th 33 (2006) .......................................................................................11, 12

*Batzel v. Smith,*
  333 F.3d 1018 (9th Cir. 2003)...............................................................................8

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 545 (2007)...............................................................................................4

*Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.,*
  206 F.3d 980 (10th Cir. 2000).............................................................................10

*Carafano v. Metrosplash.com, Inc.,*
  339 F.3d 1119 (9th Cir. 2003)...............................................................................8

*Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.,*
  519 F.3d 666 (7th Cir. 2008)..................................................................................8

*Doe II v. MySpace Inc.,*
  175 Cal.App.4th 561 (2009)...............................................................................6, 9

*Doe v. Am. Online, Inc.,*
  783 So. 2d at 1014-15 ............................................................................................8

*Doe v. MySpace, Inc.,*
  528 F.3d 413 (5th Cir. 2008)........................................................................7, 9, 10

*Dowbenko v. Google Inc.,*
  991 F. Supp. 2d 1219 (S.D. Fla. 2013) ...............................................................11

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,*
  521 F.3d 1157 (9th Cir. 2008).................................................................................7

*Finkel v. Facebook, Inc.,*
  No. 102578/09, 2009 WL 3240365 (N.Y. Sup. Ct. Sept. 15, 2009)................6, 8, 9

*Gaston v. Facebook, Inc.,*
  No. 3:12-cv-0063-ST, 2012 WL 629868 (D. Or. Feb. 2, 2012) ......................6, 8, 9

*Gentry v. eBay, Inc.,*
  99 Cal.App.4th 816 (2002)..........................................................................6, 8, 11

i

*Giordano v. Romeo*,
  76 So. 3d 1100 (Fla. 3d DCA 2011) ........................................................................8

*Green v. America Online*,
  318 F.3d 465 (3d Cir. 2003)..............................................................................9, 10

*Johnson v. Arden*,
  614 F.3d 785 (8th Cir. 2010)....................................................................................9

*Jones v. Dirty World Entm't Recordings LLC*,
  755 F.3d 398 (6th Cir. 2014)..........................................................................7, 8, 10

*Klayman v. Zuckerberg*,
  753 F.3d 1354 (D.C. Cir. 2014) *cert. denied*, 135 S. Ct. 680 (2014)................... passim

*Medytox Solutions, Inc. v. Investorshub.com, Inc.*,
  152 So. 3d 727 (Fla. Dist. Ct. App. 2014) review denied, 168 So. 3d 226 (Fla.
  2015) ........................................................................................................................8

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008)..................................................................................4

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*
  (4th Cir. 2009) 591 F.3d 250................................................................................8, 11

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007)..................................................................................7

*Price v. Gannett Co.*,
  No. 2:11-cv-00628, 2012 WL 1570972 (S.D.W.Va. May 1, 2012)........................11

*Shwarz v. United States*,
  234 F.3d 428 (9th Cir. 2000)....................................................................................4

*Tetreau v. Facebook, Inc.*,
  No. 10-4558-CZ (Mich. Cir. Ct. Feb. 23, 2011) ...................................................6, 8

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
  478 F.3d 413 (1st Cir. 2007) .................................................................................11

*Young v. Facebook, Inc.*,
  No. 5:10-CV-03579-JF/PVT, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010)..........3, 4, 6, 9

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997)..........................................................................7, 8, 10

**STATUTES**

47 U.S.C. § 230(c)(1) .................................................................................8, 12

-ii-

47 U.S.C. §§ 230(c)(1), (e)(3) .................................................................................................7

47 U.S.C. § 230(f)(2) ..............................................................................................................9

Communications Decency Act..........................................................................................2, 3

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................1, 2, 4

Federal Rule of Civil Procedure 15(a)(2).............................................................................2

**NOTICE OF MOTION AND MOTION TO DISMISS UNDER RULE 12**
**OF THE FEDERAL RULES OF CIVIL PROCEDURE**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 3, 2016 at 9:00 a.m., or at the earliest practicable time thereafter on this Court's schedule, in courtroom 4 of the Honorable Edward J. Davila, 280 South 1st Street, San Jose, California, 95113, defendant Facebook, Inc. ("Facebook") will and hereby does move for an Order dismissing Plaintiff Franco Caraccioli's ("Caraccioli") claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the supporting Declaration of Daniel E. Lassen, the Court's files in this action, the arguments of counsel, and any other matter the Court may properly consider.

Dated: October 26, 2015.                    PERKINS COIE LLP


                                            By:  /s/ Daniel E. Lassen
                                                 DANIEL E. LASSEN

                                            Attorneys for Defendant
                                            Facebook, Inc.

1

2            **MEMORANDUM OF POINTS AND AUTHORITIES**

3                      **I.      STATEMENT OF ISSUES**

4            The issues to be decided are should the First Amended Complaint ("FAC") be dismissed

5    pursuant to Fed. R. Civ. P 12(b)(6) for failure to state a claim upon which relief can be granted

6    because (i) Caraccioli agreed to Facebook's Terms of Service ("Terms") which provides that

7    Facebook does not have the obligations that the FAC claims, and (ii) the Communications

8    Decency Act ("CDA") bars the claims against Facebook?

9                          **II.      INTRODUCTION**

10           Caraccioli seeks to hold Facebook liable for content created by an unidentified Facebook

11   user, because he claims that Facebook did not remove a Facebook account containing offensive

12   images and videos.  However, as a Facebook user himself, Caraccioli agreed that Facebook is not

13   responsible for content posted by other users.  The FAC therefore fails to state a cause of action

14   against Facebook and the Court should accordingly grant the Motion to Dismiss.

15           Caraccioli's claims are also barred by the federal CDA.  Courts in California and across

16   the country have held repeatedly that the CDA immunizes Facebook and other information

17   service providers from liability arising out of content created by others.  Because Facebook

18   cannot be liable to Caraccioli for content created by other people who use Facebook, amendment

19   would be futile, and Facebook's Motion to Dismiss should be granted with prejudice.

20                  **III.      SUMMARY OF PLAINTIFF'S ALLEGATIONS**

21           Caraccioli alleges that "a third party who's [sic] identity is still unascertainable" created a

22   Facebook account under the name "Franco Caracciolijerkingman", which contained "videos and

23   pictures of Mr. Caraccioli sexually arousing or pleasuring himself."  FAC[1] ¶¶ 27, 29.

24   _____

25           [1] Caraccioli has filed three versions of his complaint, two of which are both entitled the First
     Amended Complaint.  *See* Docket Entries 4, 8.  This Motion cites to the first-filed First Amended
26   Complaint, filed on September 18, 2015, which attaches Facebook's Terms of Service.  Docket Entry 4 at
     40.  Why Caraccioli re-filed the First Amended Complaint without attaching the Terms of Service on
27   September 21 is not clear.  But to the extent they differ, the second-filed FAC should be disregarded, as
     Caraccioli had already amended his complaint as a matter of course and any further amendment required
28   Facebook's "written consent or the court's leave."  Fed. R. Civ. Proc. 15(a)(2).

1   Importantly, he does *not* allege that *Facebook* created the account, or created or posted any of the

2   photos or videos.  Instead, he alleges that Facebook allowed the content to remain on Facebook

3   after he and others requested that Facebook remove the account and its content (*id.* ¶¶ 29-30, 34,

4   36, 38-44), and Facebook "recklessly" disregarded its Terms by allegedly reviewing the reported

5   account and declining to remove it in a timely fashion.  *Id.* ¶¶ 1, 3-8, 38-44.  Caraccioli

6   acknowledges that the account has been removed.  *Id.* ¶¶ 9, 44.

7       Caraccioli prays for punitive and exemplary damages of no less than $1,000,000.00,

8   compensatory damages, mental and emotional distress damages, damages for injury to reputation,

9   interest, prevailing party attorneys' fees, and costs.  *Id.*, Prayer for Relief.

10                          **IV.    RELEVANT BACKGROUND**

11      Facebook operates a free social networking service that provides billions of users a

12  platform on which to share messages, photos, videos and links to other content.  *See* Compl. ¶ 14;

13  *see also* Facebook Newsroom, http://newsroom.fb.com/company-info/ (last visited October 22,

14  2015).  Facebook users agree to Facebook's Terms when they sign up for a Facebook account and

15  each time they access or use Facebook.  *See* Declaration of Daniel E. Lassen in Support of

16  Motion to Dismiss ("Lassen Decl."), Ex. A.

17      Caraccioli agrees that the Terms govern this dispute, because he acknowledges that he

18  agreed to them (*see* FAC ¶ 162), attaches them to the FAC, claims breach of contract based on

19  them (*id.* ¶¶ 179-190), and references the Terms throughout the FAC (*id.* ¶¶ 5, 41-43, 141-142,

20  162-163, 180-181, 208).  Among other provisions, the Terms provide that:

21      • Although Facebook provides rules for user conduct, Facebook does not control or

22          direct users' actions on Facebook and it is not responsible for the content or

23          information users transmit or share on Facebook, or for the conduct, whether

24          online or offline, of any user of Facebook (Lassen Decl., Ex. A at § 15.2); and

25      • The Terms do not confer any third party beneficiary rights (*id.* at § 18.9).

26      The Terms also specifically and conspicuously disclaim any liability for the actions of

27  others:

28

-3-

WE TRY TO KEEP FACEBOOK UP, BUG-FREE, AND SAFE, BUT YOU USE IT AT YOUR OWN RISK. WE ARE PROVIDING FACEBOOK AS IS WITHOUT ANY EXPRESS OR IMPLIED WARRANTIES INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. WE DO NOT GUARANTEE THAT FACEBOOK WILL ALWAYS BE SAFE, SECURE OR ERROR-FREE... FACEBOOK IS NOT RESPONSIBLE FOR THE ACTIONS, CONTENT, INFORMATION, OR DATA OF THIRD PARTIES, AND YOU RELEASE US, OUR DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS FROM ANY CLAIMS AND DAMAGES, KNOWN AND UNKNOWN, ARISING OUT OF OR IN ANY WAY CONNECTED WITH ANY CLAIM YOU HAVE AGAINST ANY SUCH THIRD PARTIES.

*Id.* § 15.3.

## V.   LEGAL STANDARD

A plaintiff must plead her claims with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 544 (2007).  Dismissal for failure to state a claim under Rule 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Twombly*, 550 U.S. at 570).  On a motion to dismiss, "[t]he court need not accept as true . . . allegations that contradict facts that may be judicially noticed by the court . . . and may consider documents that are referred to in the complaint whose authenticity no party questions." *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000) (citations omitted).

## VI.   ARGUMENT

### A.   Plaintiff's Allegations Fail To State A Claim Against Facebook, Because Plaintiff's Allegations Contradict Facebook's Terms.

All of Caraccioli's claims against Facebook directly contradict Facebook's Terms and should therefore be dismissed.  *See Young v. Facebook, Inc.*, No. 5:10-CV-03579-JF/PVT, 2010 WL 4269304, at *3, *5 (N.D. Cal. Oct. 25, 2010) (dismissing both a breach of contract claim premised on Facebook's failure to enforce the Terms and a negligence claim premised on Facebook's "duty to use due care when hiring and training personnel to monitor and enforce

website activity" because, in part, the Terms include "an express disclaimer").  Here, Caraccioli

acknowledges that he "agreed" to the Terms (FAC ¶ 162), and he refers repeatedly to the Terms

as the foundation for his claims.  *Id.* ¶¶ 5, 41-42, 64, 141-142, 162-163, 180-181, 193, 208.  But,

Caraccioli ignores the Terms when it suits him.  For example he asserts that Facebook had an

obligation to prevent and immediately remove content that he found objectionable, that Facebook

should be responsible for the content posted by other people on its service, and that he has the

right to enforce how Facebook applies the Terms to other users' activities.  Yet each of those

assertions are expressly contradicted by the Terms.  Ex. A, §3 (Facebook does not guarantee that

its site will be safe and free from content that violates the Terms), §15.2 (Facebook does not

control or direct users' actions and it is not responsible for the content or information shared on

Facebook), §18.9 (The Terms do not create third party beneficiary rights such as a right to assert

claims related to other user conduct).

   The Court should disregard all allegations in the FAC that are contrary to the terms of

Carraccioli's contract with Facebook.  Carraccioli alleges that, after being put on notice about the

account, Facebook "recreated, sponsored, republished, and/or acted as a speaker of the content by

deciding to continue displaying it as opposed to deleting it."  FAC ¶ 1; *see also id.* ¶¶ 38-40.  All

the claims depend on Carraccioli's allegations that Facebook republished, recreated or otherwise

displayed the Content.  *Id.* ¶ 64 (defamation), ¶ 82 (libel), ¶ 95 (invasion of privacy upon

Caraccioli's solitude or seclusion), ¶ 111 (invasion of privacy through public disclosure of private

facts), ¶ 125 (invasion of privacy by portraying Caraccioli in a false light), ¶ 141 (intentional

infliction of emotional distress), ¶ 162 (negligent infliction of emotional distress), ¶ 181 (breach

of contract), ¶ 194 (negligent hiring, supervision, or retention), ¶¶ 208-209, 212 (unfair business

practices).  Caraccioli similarly asserts that Facebook did not abide by the Terms because it did

not remove the Caracciolijerkingman account (FAC ¶¶ 5, 41-42, 64, 141-142, 162-163, 180-181,

193, 208), and Facebook had a "duty" to train its employees to detect unlawful content (*id.* ¶ 193

(negligent hiring, supervision, or retention)), and enforce the Terms.  *Id.* ¶ 181 (breach of

contract), ¶ 162 (negligent infliction of emotional distress).

-5-

1    But the Terms directly contradict these assertions as well.  Lassen Decl., Ex. A at §§ 15.2,

2    15.3, 18.9; *see Young v. Facebook*, 2010 WL 4269304, at *3 (Facebook's Terms restrict users'

3    behavior but "they do not create affirmative obligations" on Facebook).  In agreeing to

4    Facebook's Terms, Caraccioli acknowledged that "[a]lthough Facebook provides rules for user

5    conduct, Facebook does not control or direct users' actions on Facebook and it is not responsible

6    for the content or information users transmit or share on Facebook, or for the conduct, whether

7    online or offline, of any user of Facebook."  Lassen Decl., Ex. A, at § 15.2; *see also id.* at § 18.9

8    (no third-party beneficiary rights).  He further agreed that "FACEBOOK IS NOT

9    RESPONSIBLE FOR THE ACTIONS, CONTENT, INFORMATION, OR DATA OF THIRD

10   PARTIES."  *Id.* § 15.3 (all caps in the original).

11   Because the Terms directly contradict the allegations that form the basis of Caraccioli's

12   claims, the FAC should be dismissed.

13   **B.    Plaintiff's Claims Are Barred By Section 230 Of The Communications Decency Act.**

14   The FAC should also be dismissed because Section 230 of the CDA bars each of

15   Caraccioli's claims.  *See e.g.*, *Klayman v. Zuckerberg,* 753 F.3d 1354, 1355 (D.C. Cir. 2014) *cert.*

16   *denied*, 135 S. Ct. 680 (2014) (CDA barred intentional tort and negligence claims against

17   Facebook based on failure to timely remove content that allegedly violated Facebook Terms);

18   *Gaston v. Facebook, Inc.*, No. 3:12-cv-0063-ST, 2012 WL 629868, at *1-2 (D. Or. Feb. 2, 2012)

19   (dismissing defamation claim against Facebook); *Tetreau v. Facebook, Inc.*, No. 10-4558-CZ

20   (Mich. Cir. Ct. Feb. 23, 2011) (CDA barred defamation and intentional and negligent tort claims);

21   *Young v. Facebook*, 2010 WL 4269304, at *5 (dismissing negligence claims alleging that

22   Facebook has a duty to condemn threatening statements because implying such a duty would be

23   inconsistent with the policy choices undertaken by Congress in the CDA); *Finkel v. Facebook,*

24   *Inc.*, No. 102578/09, 2009 WL 3240365 (N.Y. Sup. Ct. Sept. 15, 2009) (CDA bars defamation

25   claims for statements containing negative sexual and medical connotations posted by others on

26   Facebook); *see also Doe II v. MySpace Inc.,* 175 Cal.App.4th 561, 566 (2009) (CDA barred

27   claims that a social media website failed to institute reasonable measures to prevent certain

28   communications); *accord Gentry v. eBay, Inc.*, 99 Cal.App.4th 816, 820 (2002) (CDA barred

-6-

claims seeking to "hold eBay responsible for misinformation or misrepresentations originating with other defendants or third parties").

**1.    The Communications Decency Act Prohibits Lawsuits Against Service Providers Like Facebook Based on User-Generated Content.**

Under the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," and "*[n]o cause of action may be brought and no liability may be* imposed under any State or local law that is inconsistent with this section."  47 U.S.C. §§ 230(c)(1), (e)(3) (emphasis added).  By its plain language, the CDA provides "broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (internal quotation marks and citations omitted); *see also Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (CDA applies "in all cases arising from the publication of user-generated content").

Congress enacted Section 230 to foster the development of the Internet and encourage free speech by shielding service providers from lawsuits arising out of user-generated content.  *See Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).  Section 230 is intended "to protect websites against the evil of liability for failure to remove offensive content."  *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008).  Courts apply Section 230 immunity broadly "to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles."  *Id*. at 1175.

"At its core," the CDA "bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content.'"  *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014), *quoting Zeran*, 129 F.3d at 330.  Thus, if a lawsuit seeks to hold a service provider liable for its "decisions relating to the monitoring, screening, and deletion of content," then that lawsuit must be dismissed.  *MySpace, Inc.,* 528 F.3d at 420; *see also Roommates.com,* 521 F.3d at 1170-71 ("[A]ny activity that can be boiled down to deciding

1  whether to exclude material that third parties seek to post online is perforce immune under [the
2  CDA].").

3       Caraccioli cannot plead around the CDA by renaming his claims.  "[W]hat matters is not
4  the name of the cause of action—defamation versus negligence versus intentional infliction of
5  emotional distress—what matters is whether the cause of action inherently requires the court to
6  treat the defendant as the 'publisher or speaker' of content provided by another."  *Barnes v.*
7  *Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009).  Courts have therefore dismissed a wide
8  variety of claims that seek to hold service providers liable for the speech of their users, including
9  those Caraccioli now asserts against Facebook.[2]  Courts have routinely dismissed such claims,
10  recognizing that "[m]aking interactive computer services . . . liable for the speech of third parties
11  would severely restrict the information available on the Internet" and undermine Congress's
12  intent "to maintain the robust nature of Internet communication."  *Batzel v. Smith*, 333 F.3d 1018,
13  1027-28 (9th Cir. 2003) (internal quotation marks and citation omitted).[3]

14  **2.  Facebook Meets All the Requirements for Immunity Under the
        Communications Decency Act.**

15       Facebook is entitled to CDA immunity if (1) Facebook is an "interactive computer
16  service," (2) Caraccioli's claims treat Facebook as the "publisher" or "speaker" of the offending
17  content, and (3) the offending content was "provided by another information content provider."
18  47 U.S.C. § 230(c)(1); *Jones,* 755 F.3d at 409.  Each of these requirements is satisfied here.
19  Caraccioli's claim against Facebook therefore should be dismissed with prejudice.  *See Nemet*

20

21       [2] See, e.g., *Jones*, 755 F.3d at 407 (CDA barred tort claims for emotional distress); *Klayman*, 753
22  F.3d at 1355 (CDA barred intentional assault claims against Facebook based on failure to remove
    objectionable content); *Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d
23  666, 671 (7th Cir. 2008) (CDA barred statutory civil rights claims); *Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119, 1121 (9th Cir. 2003) (CDA barred invasion-of-privacy and negligence claims); *Zeran*,
24  129 F.3d at 332 (CDA barred negligence claims); *Gentry*, 99 Cal.App.4th at 820 (CDA barred unfair
    business practices claim).
25       [3] *See, e.g., Gaston*, 2012 WL 629868, at *1-2 (dismissing defamation claim against
    Facebook); *Tetreau*, No. 10-4558-CZ (same); *Finkel*, 2009 WL 3240365 (same); *see also Doe v.*
26  *Am. Online, Inc.*, 783 So. 2d at 1014-15 (dismissing defamation claim against website); *Medytox*
    *Solutions, Inc. v. Investorshub.com, Inc.*, 152 So. 3d 727, 729 (Fla. Dist. Ct. App. 2014) review
27  denied, 168 So. 3d 226 (Fla. 2015) and cert. denied, (U.S. Oct. 5, 2015)*Medytox*, 2014 WL
    6775236, at *1 (dismissing claim seeking removal of allegedly defamatory statements on
28  defendant's website); *Giordano v. Romeo*, 76 So. 3d 1100, 1102 (Fla. 3d DCA 2011) (dismissing
    defamation claim against website).

1    *Chevrolet, Ltd. v. Consumeraffairs.com, Inc*. (4th Cir. 2009) 591 F.3d 250, 255 (explaining that

2    courts "aim to resolve the question of [CDA] immunity at the earliest possible stage of the case");

3    *MySpace,* 175 Cal.App.4th at 566 (affirming trial court's sustaining of demurrer without leave to

4    amend, as to social media website pursuant to the CDA).

5              **a.       Facebook Provides an Interactive Computer Service.**

6              The CDA defines an "interactive computer service" as "any information service, system,

7    or access software provider that provides or enables computer access by multiple users to a

8    computer server."  47 U.S.C. § 230(f)(2).  Facebook falls squarely within that definition because

9    it allows people from around the world to access its computer servers for the purposes of posting

10   and sharing photos and messages with others.  *See* FAC ¶ 14 (describing Facebook as a company

11   that "provides a social networking Website that connects people with their friends, families, and

12   other online communities").  It is therefore, no surprise that several courts have expressly found

13   that Facebook is an interactive computer service under the CDA.  *See Klayman*, 753 F.3d at 1357;

14   *Gaston*, 2012 WL 629868, at *7; *Finkel*, 2009 WL 3240365; *see also Young*, 2010 WL 4269304,

15   at *5 (rejecting claim against Facebook in part because it was "inconsistent with the policy

16   choices undertaken by Congress in the [CDA], which sharply limits the responsibility of

17   interactive computer service providers for the content provided by third parties").  There is also

18   broad precedent that social media companies like Facebook are interactive computer services

19   under the CDA.  *MySpace, Inc.*, 528 F.3d at 415 (MySpace, social network that allowed sharing

20   of photos and comments entitled to CDA immunity as an interactive computer service); *Johnson*

21   *v. Arden*, 614 F.3d 785, 792 (8th Cir. 2010) (comments posted to message board by third-party

22   users qualified defendant to CDA immunity as an interactive computer service); *Green v.*

23   *America Online*, 318 F.3d 465, 471 (3d Cir. 2003) (AOL entitled to CDA immunity as an

24   interactive computer service for messages allegedly transmitted through its service).

25              **b.       Caraccioli's Claims Treat Facebook as a Publisher or Speaker.**

26             All of Caraccioli's claims treat Facebook as the publisher or speaker of the content on the

27   Caracciolijerkingman account.  According to the FAC, "Facebook recreated, sponsored,

28   republished, and/or acted as a speaker of the content [of the Caracciolijerkingman account] by

1   deciding to continue displaying it as opposed to deleting it."  FAC ¶ 1; *see also id.* ¶¶ 38-40.

2   Indeed, each one of Caraccioli's claims depends on the allegation that Facebook republished,

3   recreated or otherwise displayed the offending content.  *Id.* ¶ 64 (defamation), ¶ 82 (libel), ¶ 95

4   (invasion of privacy upon Caraccioli's solitude or seclusion), ¶ 111 (invasion of privacy through

5   public disclosure of private facts), ¶ 125 (invasion of privacy by portraying Caraccioli in a false

6   light), ¶ 141 (intentional infliction of emotional distress), ¶ 162 (negligent infliction of emotional

7   distress), ¶ 181 (breach of contract), ¶ 194 (negligent hiring, supervision, or retention), ¶¶ 208-

8   209, 212 (unfair business practices).  The decision of what to remove from publication is "the

9   very essence of publishing," and courts have rightly found that the CDA bars claims based on the

10  failure to promptly remove content posted by others.  *See, e.g.*, *Klayman*, 753 F.3d at 1355

11  (affirming dismissal of claims that Facebook did not timely remove content based on CDA

12  immunity); *see also Jones*, 755 F.3d at 407–408, 417 (holding the CDA bars suit against provider

13  for failure to remove content posted by others); *MySpace*, 528 F.3d at 420 (recognizing CDA

14  immunity for "decisions relating to the monitoring, screening, and deletion of content").

15      Decisions about whether to deactivate users' accounts also fall squarely within the sphere

16  of "editorial and self-regulatory functions" protected by the CDA.  *See Ben Ezra, Weinstein, &*

17  *Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 986 (10th Cir. 2000).  For more than 15 years, courts

18  have repeatedly determined that the CDA bars any and all claims "relating to the monitoring,

19  screening, and deletion of content from [a covered service's] network—actions quintessentially

20  related to a publisher's role."  *Green,* 318 F.3d at 471; *see also Ben Ezra, Weinstein & Co*, 206

21  F.3d at 986 (the CDA "forbid[s] the imposition of publisher liability on a service provider for the

22  exercise of its editorial and self-regulatory functions"); *Zeran*, 129 F.3d at 328 (affirming

23  dismissal of complaint where plaintiff argued that AOL "refused to post retractions of [allegedly

24  defamatory] messages, and failed to screen for similar postings thereafter").

25      Facebook's alleged failure to remove certain content in a timely manner is a quintessential

26  exercise of a traditional publisher function, which is immune under the CDA.  There is no

27  escaping that the FAC seeks to hold Facebook liable as the "publisher" or "speaker" of the

28  allegedly offending content based on its alleged failure to prevent or remove certain content.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

c.       **The Offending Content Was Posted by An Unknown Facebook User—Another Information *Content* Provider.**

Caraccioli has not alleged that Facebook is responsible, in whole or in part, for the creation or development of the Caracciolijerkingman account or its content.  Nor could he.  *See Dowbenko v. Google Inc.*, 991 F. Supp. 2d 1219, 1220 (S.D. Fla. 2013) (rejecting as "simply implausible" the notion that Google executives were responsible for defamatory content posted via Google services).  To the contrary, Caraccioli alleges that a person who "is still unascertainable" – not Facebook – was responsible for creating the allegedly injurious account.  FAC ¶ 27.  This "unascertainable" person – not Facebook – is the "information content provider[]."  *See, e.g.*, *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.* 591 F.3d 250, 254 (4th Cir. 2009) (affirming dismissal of claims against website based on allegedly unlawful consumer reviews published on website; explaining that "[s]tate-law plaintiffs may hold liable the person who creates or develops unlawful content, but not the interactive computer service provider who merely enables that content to be posted online"); *Price v. Gannett Co.*, No. 2:11-cv-00628, 2012 WL 1570972, at *2 (S.D.W.Va. May 1, 2012) (dismissing claims against Topix.com based on allegedly tortious posts because "Plaintiffs have admitted in the complaint that the unknown individuals provided the statements, not Topix," and it "is also clear that Plaintiffs are treating Topix as the publisher" of the allegedly tortious posts).

Caraccioli's attempt to plead around CDA immunity by alleging that Facebook acted recklessly or intentionally in not immediately removing offending content on its website after Caraccioli and others notified Facebook about the account (FAC ¶¶ 1, 3-8, 29-30 32,-36, 38-44), is of no moment.  Facebook is entitled to CDA immunity regardless of whether it was on notice of Caraccioli's desire to have the content removed.  *See, e.g., Klayman*, 753 F.3d at 1355 (CDA barred claims against Facebook based on failure to remove content that allegedly violated Facebook Terms)*;Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007) (holding that CDA immunity "applies even after notice of the potentially unlawful nature of the third-party content"); *Barrett v. Rosenthal*, 40 Cal. 4th 33, 39 (2006) (holding that the CDA immunizes information service providers from notice liability); *Gentry*, 99 Cal. App. 4th at 835

-11-

1    (holding that the CDA immunized eBay where the "claim s[ought] to hold eBay responsible for

2    having notice of illegal activities conducted by others on its web site, and for electing not to take

3    action against those third parties, including by withdrawing or somehow altering the content

4    placed by them"), cited with approval in *Barrett*, 146 P.3d at 518.  Notice accordingly does not

5    affect Facebook's immunity under the CDA.

6         Because each of the three elements of Section 230(c)(1) are met, Facebook is immune

7    from liability for each of Caraccioli's claims and the Motion to Dismiss should be granted.

8                                **VII.    CONCLUSION**

9         Facebook requests that the Court grant Facebook's Motion to Dismiss in its entirety,

10   without leave to amend because Caraccioli has failed to allege any cause of action against

11   Facebook, and given the broad immunity granted by the CDA, any attempt to amend would be

12   futile.

13   Dated: October 26, 2015.                    PERKINS COIE LLP

14

15                                        By:  /s/ Daniel E. Lassen
16                                             DANIEL E. LASSEN

17                                        Attorneys for Defendant
                                          Facebook, Inc.

18

19

20

21

22

23

24

25

26

27

28

1

### CERTIFICATE OF SERVICE

2

3        I certify that on October 26, 2015, I electronically filed the foregoing *DEFENDANT*

*FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS* with the Clerk of the

4

Court using the CM/ECF system.  I also caused service to be made by email, pursuant to

5

agreement, to the following addressee pursuant to Civil L.R. 5-1(h)(2):

6

7        FRANCO CARACCIOLI
         1281 9th Avenue #2905
         San Diego, CA 92101

8        Email: francocaraccioli@gmail.com

9        Plaintiff Pro Se

10

11

12       I certify under penalty of perjury that the foregoing is true and correct.

13   DATED October 26, 2015.

14

15                                              _____

16                                              Diane G Lizardo

17

18

19

20

21

22

23

24

25

26

27

28

FACEBOOK'S MOTION TO DISMISS
CASE NO.: 15-cv-04145-EJD