UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FRANCO CARACCIOLI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FACEBOOK, INC.,<br><br>　　　　Defendant. | Case No.  5:15-cv-04145-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 17, 21 |

With the rise of social media on the internet, many people choose to make public the aspects of their lives that would otherwise be known to few. Social media networks can also be easily misused, however, by those motivated to impermissibly reveal the private matters of others. Plaintiff Franco Caraccioli ("Plaintiff") alleges in this case that someone posted private images and videos to a webpage without his consent and disseminated that material to his unsuspecting online network of friends, family and professional contacts. He asked Defendant Facebook, Inc. ("Facebook") to remove the webpage, but was unsatisfied with Facebook's response. He filed this action for damages against Facebook as a result.

Two matters are now before the court. In the first, Facebook moves to dismiss Plaintiff's claims because it argues they contradict Facebook's Terms of Service and are barred by the Communications Decency Act. In the second, Plaintiff seeks leave file a second amended complaint that includes an additional claim. Having carefully considered the parties' arguments for and against these motions, this court has determined that Plaintiff cannot maintain this case either as pled or as re-pled in an amended complaint. Accordingly, Facebook's motion will be

1

granted, all claims will be dismissed without leave to amend, and Plaintiff's motion will be denied.

## I.  BACKGROUND

According to Plaintiff, a law student, "[t]his is a case about one of the most powerful corporations in the world, a corporation that maliciously recreated obscene or pornographic sexual content on a personal profile named 'Franco Caracciolijerkingman' . . . inside its online digital community . . . ." First Am. Compl. ("FAC"), Dkt. No. 4, at ¶¶ 1, 10.  The referenced corporation is Facebook, which is a Delaware corporation[1] that provides "a social networking Website that connects people with their friends, families and other online communities." Id. at ¶¶ 12, 14.

Plaintiff alleges that, on September 14, 2014, "an account who's creator is still unascertainable" created a Facebook account entitled "Franco Caracciolijerkingman" (the "suspect account"). Id. at ¶ 27.  This account "included videos and pictures of [Plaintiff] sexually arousing or pleasuring himself . . . ." Id. at ¶ 29.  Plaintiff became aware of the account because it sent him a "friend request." Id. at ¶ 28.  He believes a similar request "was sent to every friend [Plaintiff] has in his community because of the amount of messages or calls he received that day." Id. at ¶ 31.

After becoming aware of the account, Plaintiff reported it to Facebook and demanded that it be deleted "because of the humiliating sexual nature of the content." Id. at ¶ 30.  He clicked on several of the photos and videos published with the account "in order to report or notify" Facebook with his own personal account. Id. at ¶ 32, 33.  Many of his friends and family members informed Plaintiff they would also report the account to Facebook and ask that it be deleted. Id. at ¶ 34-36.  Plaintiff, however, received other calls and messages that he alleges were made "solely to humiliate, mock, ridicule, or embarrass" Plaintiff. Id. at ¶ 37.

The day after his report, Plaintiff received an email from Facebook in which it admitted

---

[1] Although the amended complaint claims something different, subject matter jurisdiction arises based on diversity of citizenship.  Dkt. Nos. 11, 15.

2
Case No.: 5:15-cv-04145-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

receiving notifications concerning the account but stating it had reviewed the account and "'determined that Franco Caracciolijerkingman is a person who's using Facebook in a way that follows the Facebook Community Standards.'" Id. at ¶ 38. Subsequently, Plaintiff sent an email to Facebook suggesting he would take legal action. Id. at ¶ 43. Plaintiff alleges that Facebook then deleted the account the following day. Id. at ¶ 44.

Plaintiff initiated this action on September 11, 2015, and filed an amended complaint on September 18, 2015.[2] He asserts the following claims under California law: (1) defamation, (2) libel, (3) intrusion upon seclusion, (4) public disclosure of private facts, (5) false light, (6) intentional infliction of emotional distress, (7) negligent infliction of emotional distress, (8) breach of contract, (9) negligent supervisions and retention, and (10) violation of the Unfair Competition Law ("UCL"), Business and Professions Code § 17200 et seq. These motions followed.

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). The factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Id. at 556-57. A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

When deciding whether to grant a motion to dismiss, the court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United

---

[2] Another copy of the amended complaint was filed on September 21, 2015. Dkt. No. 8.

3
Case No.: 5:15-cv-04145-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

Also, the court generally does not consider any material beyond the pleadings for a Rule 12(b)(6) analysis. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Exceptions to this rule include material submitted as part of the complaint or relied upon in the complaint, and material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001).

### B. Pro Se Pleadings

Where, as here, the pleading at issue is filed by a plaintiff proceeding pro se, it must be construed liberally. Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). In doing so, the court "need not give a plaintiff the benefit of every conceivable doubt" but "is required only to draw every reasonable or warranted factual inference in the plaintiff's favor." McKinney v. De Bord, 507 F.2d 501, 504 (9th Cir. 1974). The court "should use common sense in interpreting the frequently diffuse pleadings of pro se complainants." Id. A pro se complaint should not be dismissed unless the court finds it "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 521 (1972).

## III. DISCUSSION

As noted, Facebook challenges Plaintiff's claims on two grounds. First, it argues that Plaintiff's allegations fail to state a claim because they contradict Facebook's Terms of Service. Second, Facebook contends this lawsuit is barred by § 230(c) of the Communications Decency Act. These arguments are discussed below.

### A. Facebook's Terms of Service

Facebook requires users agree to its Terms of Service.[3] Decl. of Daniel E. Lassen, Dkt.

---

[3] For this motion, the court considers the version of the Terms of Service revised on January 30, 2015, since Plaintiff attached this version to his complaint. At the motion hearing, Plaintiff speculated that he agreed to different terms when he created his own Facebook account several

4
Case No.: 5:15-cv-04145-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

No. 17, at Ex. A ("By using or accessing the Facebook Services, you agree to this Statement, as updated from time to time . . . ."). Among its provisions are those addressing "Safety," through which users commit not to "bully, intimidate, or harass any user," not to post content that is "hate speech, threatening, or pornographic; incites violence; or contains nudity or graphic or gratuitous violence," and not to "use Facebook to do anything unlawful, misleading, malicious, or discriminatory." Id. at § 3. There is also a section entitled "Protecting Other People's Rights," which prohibits users from posting content or taking any action that "infringes or violates someone else's rights or otherwise would violate the law," and provides the Facebook "can remove any content or information you post . . . if we believe that it violates" the Terms of Service or other policies. Id. at § 5. Furthermore, there is a disclosure which states:

> Although we provide rules for user conduct, we do not control or direct users' actions on Facebook and are not responsible for the content or information users transmit or share on Facebook. We are not responsible for any offensive, inappropriate, obscene, unlawful or otherwise objectionable content or information you may encounter on Facebook. We are not responsible for the conduct, whether online or offline, of any user of Facebook.

Id. at § 15.

Another disclosure is emphasized in majuscule and provides in relevant part:

> We try to keep Facebook up, bug-free, and safe, but you use it at your own risk. We are providing Facebook as is without any express or implied warranties including, but not limited to, implied warranties of merchantability, fitness for a particular purpose, and non-infringement. We do not guarantee that Facebook will always be safe, secure or error-free or that Facebook will always function without disruptions, delays or imperfections. Facebook is not responsible for the actions, content, information, or data of third parties, and you release us, our directors, officers, employees, and agents from any claims and damages, known and unknown, arising out of or in any way connected with any claims you have against any such third parties.

Id.

Facebook argues the Terms of the Service foreclose all of Plaintiff's claims. Specifically,

---

years ago. That possible inconsistency is of no moment to a review of his pleading with the updated Terms of Service attached.

5

Case No.: 5:15-cv-04145-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Facebook contends the court should disregard one particular allegation critical to Plaintiff's theory; that Facebook "recreated, sponsored, republished, and/or acted as a speaker of the content" of the suspect account "by deciding to continue displaying it as opposed to deleting it." The court agrees this allegation should be disregarded under well-established rules applicable in this context.

For a motion under Rule 12(b)(6), the Ninth Circuit has recognized that the district court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) (holding the court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell, 266 F.3d at 979. Applying these rules to Plaintiff's pleading means the court does not presume the truth of the allegation that Facebook somehow became the publisher of content on the suspect account when Facebook purportedly reviewed it and then did not terminate it. This is because Plaintiff, by relying on the January 30th Terms of Service in the operative version of the complaint, cannot contradict the provision clarifying that Facebook is not responsible for content shared by other users, including any content that is "offensive, inappropriate, obscene, unlawful or otherwise objectionable." Plaintiff must accept the Terms of Service he incorporated into his pleading as a whole, not just those provisions that benefit his cause.[4]

Without the "republication" allegation, Plaintiff has not stated a claim for defamation, libel, false light, or public disclosure of private facts because each of those claims presume a publication made by the defendant. Burrill v. Nair, 217 Cal. App. 4th 357, 351 (2013) ("Defamation requires the intentional publication of a false statement of fact that has a natural tendency to injure the plaintiff's reputation or that causes special damage."); Cal. Civ. Code § 45

---

[4] The "republication" allegation could also be disregarded as a legal conclusion cast as a factual allegation. See W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

("Libel is a false and unprivileged publication . . . ."); Selleck v. Globe Int'l, Inc., 166 Cal. App. 3d 1123, 1133 (1985) ("An action for invasion of privacy by placing the plaintiff in a false light in the public eye . . . is in substance equivalent to a libel claim."); Taus v. Loftus, 40 Cal. 4th 683, 724 (2007) (establishing a "public disclosure" as an element of public disclosure of private facts). Nor has he stated a claim for intrusion upon seclusion or intentional infliction of emotional distress because those claims require intent on the part of the tortfeasor. Taus, 40 Cal. 4th at 724 (specifying that intrusion upon seclusion requires an intentional intrusion); Christensen v. Super. Ct., 54 Cal. 3d 868, 903 (1991) (providing that, to prove intentional infliction of emotional distress, the plaintiff must show the defendant acted intentionally). In addition, he cannot maintain a claim for negligent supervision and hiring since, as pled, the claim relies on "republication" as the basis for Facebook's liability. FAC, at ¶ 194 ("[Facebook] negligently failed to investigate the background of [Facebook] employees . . . to prevent republication of sexual or otherwise unlawful content in [Facebook's] website.").

The Terms of Service are also fatal to Plaintiff's claims for negligent infliction of emotional distress and breach of contract. Negligent infliction of emotional distress is a species of negligence (Huggins v. Longs Drugs Stores Cal., Inc., 6 Cal. 4th 124, 129 (1993)), which under California law has three elements: (1) the defendant owed a legal duty to use due care, (2) a breach of that duty, and (3) the breach was the proximate or legal cause of the resulting injury. Ladd v. Cnty. of San Mateo, 12 Cal. 4th 913, 917 (1996). To properly plead breach of contract, "[t]he complaint must identify the specific provision of the contract allegedly breached by the defendant." Donohue v. Apple, Inc., 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012) (citing Progressive West Ins. Co. v. Super. Ct., 135 Cal. App. 4th 263, 281 (2005)). Here, Plaintiff uses the Terms of Service to both define Facebook's duty for negligence and its obligations for breach of contract. FAC, at ¶ 162 ("Facebook owed a duty to [Plaintiff] based on the 'Terms of Service' agreed and [Facebook] breached this duty by republishing or recreating in whole the [suspect account]."); ¶ 181 ("[Facebook] breached their contractual duty under the 'Terms of Service' . . .

."). But as another court has correctly recognized, while Facebook's Terms of Service "place restrictions on users' behavior," they "do not create affirmative obligations." Young v. Facebook, Inc., No. 5:10-cv-03579-JF/PVT, 2010 U.S. Dist. LEXIS 116530, at *11, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010). Plaintiff, therefore, cannot base these claims on the Terms of Service.

Finally, Plaintiff's UCL claim is tethered to the allegations stated for his other claims. FAC, at ¶ 206. As those claims fail, so does the one for violation of the UCL. See Franczak v. Suntrust Mortg. Inc., No. 5:12-cv-01453 EJD, 2013 U.S. Dist. LEXIS 126977, at *19, 2013 WL 4764327 (N.D. Cal. Sept. 5, 2013).

In his opposition, Plaintiff makes several arguments in an effort to avoid the Terms of Service. Aside from stating that his allegations do not contradict the Terms of Service, he also believes Facebook has unclean hands and that the "boilerplate terms" of the documents are unconscionable. Plaintiff invites a misuse of these doctrines, however. "Unclean hands is an *affirmative defense* in actions seeking equitable relief." Wilson v. S.L. Rey, Inc., 17 Cal. App. 4th 234, 244 (1993) (emphasis added). The doctrine of unconscionability is likewise "a *defense* to enforcement of a contract." Cal. Grocers Assn. v. Bank of America, Nat'l Trust & Savings Ass'n, 22 Cal. App. 4th 205, 217 (1994) (emphasis added). Here, it is Plaintiff, not Facebook, who asserts a breach of contract claim based on the Terms of Service. He therefore cannot attempt to counter Facebook's arguments with defenses reserved for a defendant.

Because the allegations in the amended complaint contradict the incorporated Terms of Service, all of Plaintiff's claims must be dismissed.

### B. Communications Decency Act

Section 230 of the Communications Decency Act "immunizes providers of interactive computer services against liability arising from content created by third parties." Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc). To that end, § 230(c)(1) states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another

information content provider." 47 U.S.C. § 230(c)(1). The purpose of § 230(c) immunity is to spare interactive computer service providers the "grim choice" of becoming fully responsible for third-party content "by allowing them to perform some editing on user-generated content without thereby becoming liable for all defamatory or otherwise unlawful messages that they didn't edit or delete." Roommates.com, 521 F.3d at 1163. As the Ninth Circuit observed, "[m]aking interactive computer services and their users liable for the speech of third parties would severely restrict the information available on the Internet." Batzel v. Smith, 333 F.3d 1018, 1027-28 (9th Cir. 2003). "Section 230 therefore sought to prevent lawsuits from shutting down websites and other services on the Internet." Id. at 1028.

Broken into elements, § 230(c) will require dismissal of Plaintiff's state law claims if: (1) "Facebook is a 'provider or user of an interactive computer service,'" (2) the information for which Plaintiff seeks to hold Facebook liable was "'information provided by another information content provider,'" and (3) "the complaint seeks to hold Facebook as the 'publisher or speaker' of that information." Klayman v. Zuckerberg, 753 F.3d 1354, 1357 (D.C. Cir. 2014) (quoting 27 U.S.C. § 230(c)(1)); see Sikhs for Justice "SFJ", Inc. v. Facebook, Inc., No. 15-cv-02442, 2015 U.S. Dist. LEXIS 154716, at *9, 2015 WL 7075696 (N.D. Cal. Nov. 13, 2015); see also 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.").

Plaintiff's amended complaint satisfies each element. Taking them in order, Plaintiff does not vigorously dispute that Facebook "provides or enables computer access by multiple users to a computer service." 47 U.S.C. § 230(f)(2). As such, the court finds, as others have previously, that Facebook provides an interactive computer service. See Klayman, 753 F.3d at 1357; see also Sikhs for Justice, 2015 U.S. Dist. LEXIS 154716, at *10; see also Fraley v. Facebook, Inc., 830 F. Supp. 2d 785, 801 (N.D. Cal. 2011).

Turning to the second element, it is evident that Plaintiff seeks to hold Facebook liable for content that was provided by a third party because he alleges in the amended complaint that

someone or something other than Facebook crated the suspect account, specifically a "creator is still unascertainable." FAC, at ¶ 27. Though he relies on several cases to suggest that Facebook itself either "provided" or "materially contributed to" the content on the suspect account through the limited conduct alleged in the amended complaint, such argument is unpersuasive because the facts of those cases are unique and distinguishable.

For example, in Fraley v. Facebook, the court found that Facebook qualified as an "information content provider" under 47 U.S.C. § 230(f)(2) because it was alleged to have taken users' names, photographs and likenesses "to create new content that it publishes as endorsements of third-party products or services." 830 F. Supp. 2d at 801. And in Fair Housing Council of San Fernando Valley v. Roommates.com, LLC, the Ninth Circuit found the defendant "much more than a passive transmitter of information provided by others" when its website required users to respond to a series of questions and then assembled the answers into a "profile page." 521 F.3d at 1166. The court held under those particular facts that the defendant was "undoubtedly the 'information content provider' as to the questions and can claim no immunity for posting them on its website, or forcing subscribers to answer them as a condition of using its services." Id. at 1164.

Here, in contrast to Fraley and Roommates.com, Plaintiff does not allege that Facebook actually created, developed or posted the content on the suspect account. He instead contends the identity of the creator is unknown, but that Facebook should be deemed responsible for the account because it reviewed it and decided not to remove it. Liability based on that sort of vicarious responsibility, however, is exactly what § 230(c) seeks to avoid. See Roommates.com, 521 F.3d at 1163; see also Batzel, 333 F.3d at 1029 ("Without the immunity provided in Section 230(c), users and providers of interactive computer services who review material could be found liable for the statements of third parties, yet providers and users that disavow any responsibility would be free from liability.").[5]

---

[5] Plaintiff argued at the hearing that applying the § 230(c) bar to his claims would permit Facebook to escape liability for what he termed "reckless" or "malicious" conduct. But aside from the lack of factual allegations in the amended complaint supporting these adjectives, Plaintiff did

10
Case No.: 5:15-cv-04145-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Finally, Plaintiff's "republication" theory falls squarely within the third element because it would hold Facebook liable as the as the publisher or speaker of the content on the suspect account. For this element, "what matters is not the name of the cause of action . . . what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1101-1102 (9th Cir. 2009). "To put it another way, courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" Id. at 1102. Since, as discussed above, all of Plaintiff's claims rely on the allegation that Facebook became the republisher of the suspect account, "section 230(c)(1) precludes liability." Id.

Plaintiff proposes that this case is distinct from others to which §230(c) has applied because, according to him, the content on the suspect account was "facially objectionable" which Facebook "should have and could have easily deleted." In other words, he classifies this case as one involving editorial inaction rather than affirmative editorial action. But the Ninth Circuit has already explained why this distinction makes no difference. "[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." Id. "[R]emoving content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove." Id. at 1103. Plaintiff's illusory clarification aside, he cannot escape the fact that his theory runs afoul of the way in which § 230(c) has been interpreted and applied.

Based on the foregoing, the immunity bestowed on interactive computers service providers by § 230(c) prohibits all of Plaintiff's claims against Facebook. Facebook's motion to dismiss will be granted on this and the preceding basis concerning the Terms of Service.

---

not cite to authority establishing that the recklessness or maliciousness of a provider's behavior is part of the inquiry under § 230(c). The two district court opinions he relied on for this argument, Sherman v. Yahoo! Inc., 997 F. Supp. 2d 1129 (2014), and Holomaxx Techs. v. Microsoft Corp., 783 F. Supp. 2d 1097 (2011), are inapposite because they each discuss another provision of § 230(c) not at issue here.

C.   **Leave to Amend**

The court must now decide whether Plaintiff should be permitted leave to amend the existing claims. Leave to amend is generally granted with liberality. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir.1990). Leave need not be granted, however, where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. Foman v. Davis, 371 U.S. 178, 182 (1962); Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 1994). Because Plaintiff's claims against Facebook are barred as a matter of law by § 230(c), the court finds that allowing for their amendment would be futile. See Sikhs for Justice, 2015 U.S. Dist. LEXIS 154716, at *18. They will be dismissed without leave to amend. Id.

The court has also considered Plaintiff's motion for leave to file a second amended complaint, through which he seeks to add a claim for unauthorized use of his likeness under California Civil Code § 3344. To state a claim for violation of § 3344, a plaintiff must allege the elements of a common law misappropriation claim: "'(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury.'" Downing v. Abercrombie & Fitch, 265 F.3d 994, 1001 (9th Cir. 2001) (quoting Eastwood v. Super. Ct., 149 Cal. App. 3d 409, 417 (1983)). In addition, the plaintiff must allege "a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose." Id.

In his proposed amended pleading, Plaintiff relies on the same unsuccessful "republication" theory in order to allege that "Facebook knowingly used Plaintiff's photographs, videos, and name or likeness for commercial use . . . ." But just like his other claims, the § 3344 claim seeks to hold Facebook liable for third-party content on the suspect account. The claim would therefore be subject to dismissal as barred by § 230(c) in the same was his Plaintiff's other claims. Accordingly, his motion for leave to file a second amended complaint will be denied because allowing Plaintiff to assert the proposed § 3344 claim would be futile. See Saul v. United

12

Case No.: 5:15-cv-04145-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

1  States, 928 F.2d 829, 843 (9th Cir. 1991) ("A district court does not err in denying leave to amend

2  where the amendment would be futile . . . or would be subject to dismissal.").

3  **IV.   ORDER**

4  Based on the foregoing, Facebook's Motion to Dismiss is GRANTED. Plaintiff's claims

5  are DISMISSED WITHOUT LEAVE TO AMEND. Plaintiff's Motion for Leave to File a Second

6  Amended Complaint is DENIED.

7  Judgment will be entered in favor of Facebook and the Clerk shall close this file.

9  **IT IS SO ORDERED.**

10  Dated: March 7, 2016



EDWARD J. DAVILA
United States District Judge

13

Case No.: 5:15-cv-04145-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S
MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT